Appellants Shantina Kelley and Demetrius Stokes, by their next friends, sued various defendants seeking compensatory and punitive damages. Their complaint asserted a number of claims, including a claim of negligence and a product-liability claim under R.C. 2307.71 et seq. They alleged injuries as a result of a fire caused by a halogen lamp. This appeal is limited to their claims against appellee Underwriters Laboratories Inc. ("UL").
In their appeal, Kelley and Stokes raise two assignments of error. In their first assignment, they claim that the trial court erred in entering summary judgment in favor of UL, because there is a genuine issue of material fact whether UL "listed" the halogen lamp. In their second assignment, they contend that the trial court erred in failing to enter summary judgment in their favor on their claims against UL.
This court's review of summary judgment is de novo.[1] To properly grant summary judgment, a court, upon reviewing the evidence in a light most favorable to the nonmoving party, must determine that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party.[2] Where a moving party asserts that the nonmoving party cannot prove its case, the moving party must provide the basis for its assertion and identify Civ.R. 56(C) evidence that affirmatively demonstrates the nonmoving party has no evidence to support its claims.[3] If the moving party succeeds in meeting this burden, the nonmoving party must, as outlined in Civ.R. 56(E), set forth specific facts showing that there is a genuine issue of material fact. Thus, we must first determine whether the trial court could have concluded from the evidence, construed in a light most favorable to Kelley and Stokes, that UL listed the lamp that allegedly caused the fire.
To understand the genesis of the claim against UL, it is important to explain UL's function. UL is a company that evaluates voluntarily submitted product samples for compliance with minimum safety standards. If the sample product complies, the applicant or manufacturer submitting the sample is authorized to apply a label with the UL listing mark. The listing mark indicates to the public that the product complies with UL's standards.
The label also contains a unique issue number. The issue number is a means to identify when and to whom UL issued the label. It has both a unique alpha prefix and a number. When a product is authorized to bear UL's listing mark, the manufacturer or applicant may purchase a block of labels from a UL-designated printer.
As explained by a UL engineer, "Listed means that a product has been evaluated, found to comply with the standard that the product falls under, and that the manufacturer has been authorized to place the UL listing mark on the product; and his name, the name of the company, the listee, the name of the company that the listing appears in, appears in a directory."
Before being authorized to use a listing mark, the manufacturer or applicant must enter a follow-up service agreement that permits UL to make unannounced visits and inspections at any time. The manufacturer or applicant has the responsibility to notify UL of any changes in its product so that UL can evaluate a change to determine if retesting is necessary.
In support of its summary-judgment motion, UL submitted the following evidence. Elinor Kennedy, the lessee of the apartment in which the fire occurred, purchased a halogen pole lamp from a McCrory store sometime between August and September of 1993. The fire occurred September 16, 1993. Yang Lighting, Inc. ("Yang") manufactured the lamp during 1992 and 1993.
There is no evidence that the lamp had a UL listing mark. The fire destroyed the lamp itself, and Kennedy could not recall whether the lamp she purchased had such a label. Kelley's and Stokes's experts examined two exemplars of what they believed was the same type of lamp involved in the fire. One was bought on September 24, 1993, from the McCrory store where Kennedy purchased her lamp. Kelley's and Stokes's counsel provided the other sometime in 1995. Both were obviously provided after the fire. Each exemplar bore what appeared to be a label containing a UL listing mark. No expert testified that the exemplar lamps were manufactured in compliance with UL's standards. One expert testified the exemplars were not manufactured in compliance with UL's standards. And a UL engineer testified that the UL labels on the exemplars were counterfeit because they failed to contain an alpha prefix.
UL had authorized Yang to place the label containing its listing mark on a halogen pole lamp on March 15, 1993. Before the authorization date, Yang had shipped 21,300 lamps to McCrory. After March 15, 1993, Yang shipped only 2,100 lamps. There is no evidence of the date Yang manufactured or shipped the particular lamp in the fire. The vast majority of the lamps evidently bore the counterfeit labels, as did the exemplar lamps purchased after the fire.
Kelley and Stokes relied on the testimony of McCrory's employee, Michael Capuano. Capuano had visited Yang in the summer of 1992 to determine whether the factory was operating under UL's "rules and regulations." He asked the manufacturer whether its factory and the halogen lamp McCrory wanted to purchase were "UL approved." He testified that the employee to whom he spoke assured him that the factory was "UL approved," as was the halogen lamp. (The UL engineer testified there are no "UL-approved" products, only "UL-listed" products.) A Yang employee showed him some UL documentation allegedly showing authorization to use "the UL label." He saw the "UL label" on the sample in the showroom, but could not recall whether it contained a listing number. Capuano testified that pictures of the exemplar lamps depicted the lamp he saw at Yang. Another McCrory employee also identified the halogen lamp from a photograph on one of the exemplar's boxes as resembling the one McCrory sold.
The issue is whether the lamp that allegedly caused the fire was manufactured in compliance with UL's standards and was authorized to carry its label. Reviewing the evidence before us, we conclude that UL met its burden of providing evidentiary material demonstrating that Kelley and Stokes had no evidence to prove that UL had authorized the halogen lamp at issue to carry UL's label.
At best, Kelley and Stokes provided inadmissible hearsay evidence that a halogen lamp manufactured by Yang in 1992 had "UL approval." Capuano related a statement made by an-out-of-court declarant that the halogen lamp was UL-approved. Capuano's testimony did not involve an admission of a party-opponent under Evid.R. 801(D)(2), because the unidentified Yang employee was not a representative of UL. And the record fails to demonstrate that the statements testified to by Capuano fell under any exception to the hearsay rule. In contrast, UL submitted admissible evidence that Yang was not authorized to use UL's label on its halogen lamp until March 15, 1993, and there is no evidence in the record that the lamp in question was manufactured or shipped after that date. Despite their best speculations, Kelley and Stokes have failed to point to any facts in the record, when construed most strongly in their favor, that support their claims against UL. A jury would be left to conjure a scenario that the lamp in question had been listed by UL, when all available evidence is to the contrary. Thus, the trial court correctly concluded that UL was entitled to judgment as a matter of law.
Our disposition of the first assignment renders moot Kelley's and Stokes's second assignment of error, and under App.R. 12(A)(1)(c) we need not address it.
Therefore, we affirm the trial court's judgment. And the Court, considering that there were reasonable grounds for this appeal, allows no penalty. Costs to be taxed in compliance with App.R. 24. A copy of this Memorandum Decision and Judgment Entry shall constitute the mandate, which shall be sent to the trial court for execution pursuant to App.R. 27.
Judgment affirmed.
GORMAN P.J., and SHANNON, J., concur.
RAYMOND E. SHANNON, retired, of the First Appellate District, sitting by assignment.
To the Clerk:
Enter upon the Journal of the Court on February 5, 1999 per order of the Court ____________________. Presiding Judge
[1] Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,506 N.E.2d 212; Koos v. Cent. Ohio Cellular, Inc. (1994),94 Ohio App.3d 579, 641 N.E.2d 265.
[2] See State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,639 N.E.2d 1189; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267, 274.
[3] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293,662 N.E.2d 264, 274.